# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| JAMES C. BANKS, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 7:11-CV-3971-VEH** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
|     **Defendant.** | ) |

---

## MEMORANDUM OPINION

For a second time,[1] Plaintiff James C. Banks (hereinafter "Mr. Banks") brings this disability action on appeal pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act (the "Act"). He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[2] Mr. Banks timely pursued and exhausted his administrative

---

[1] The first appeal brought by Mr. Banks resulted in a remand to the Commissioner by the undersigned for further development. *Banks v. Astrue*, No. 7:08-CV-395-VEH, (Doc. 12) (N.D. Ala. Oct. 21, 2012); (*see also* R. 484-85).

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims.

remedies available before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Banks was a 54-year-old male at the time of his second hearing before the Administrative Law Judge ("ALJ"), which took place on October 21, 2009.  (R. 613, 616).  He has a high school education.  (R. 414).  His past work experiences include employment as a burner in a coal mine, bathtub assembler, tree-cutter, and meter-reader.   (R. 449-450).

Mr. Banks claims he became disabled on May 3, 2000, due to status post open reduction and internal fixation ("ORIF") of the right ankle, mechanical back pain due to lumbar laminectomy, hypertension, and affective mood disorder. (R. 468, 35).  Mr. Banks has not engaged in substantial gainful activity ("SGA") since his alleged onset date of disability of May 3, 2000.  (R. 467).  Mr. Banks's onset date coincides with a reported work-related injury.  (R. 181, 487).

Mr. Banks filed his application for a period of disability and DIB on April 27, 2004.  (R. 14, 35. 487).  He also filed a Title XVI application for SSI on April 27,

Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

2004.  (R. 14, 296, 487).

After these claims were denied by the Commissioner by way of a final administrative action taken on January 4, 2008 (R. 488), Mr. Banks appealed the decision to this court. *Banks v. Astrue*, No. 7:08-CV-395-VEH, (Doc. 1) (N.D. Ala. Mar. 5, 2008).  On appeal, the undersigned remanded the case to the Commissioner for further development. *Banks v. Astrue*, No. 7:08-CV-395-VEH, (Docs. 11, 12) (N.D. Ala.  Oct. 21, 2008); (*see also* R. 484-500).

On November 17, 2008, the Appeals Council issued a notice relating to the remand ordered by the undersigned. (R. 501).  In particular, the Appeals Council had identified a subsequent disability application made by Mr. Banks on February 13, 2008, and directed the ALJ to "issue a new decision on the associated claims." (R. 503).

Subsequently, a new hearing was held on October 21, 2009, by the same ALJ who presided over the initial hearing, which occurred on September 15, 2006. (*Compare* R. 613 *with* R. 408).  On December 16, 2009, the ALJ issued a new disability determination, denying Mr. Banks's claims for the second time.  (R. 466-74).

Pursuant to his receipt of the notice of an unfavorable decision (R. 463), on January 15, 2010, Mr. Banks submitted to the Appeals Council his exceptions to the

adverse ruling.  (R. 459-62).  On September 22, 2011, the Appeals Council declined to assume jurisdiction, and, consequently, the second ALJ determination became the final decision of the Commissioner on remand.  (R. 455-56).

On November 21, 2011, Mr. Banks initiated this action which asks this court to review the final decision of the Commissioner upon remand.  (Doc. 1).  Mr. Banks filed a brief in support of his appeal on April 30, 2012.  (Doc. 10).  The Commissioner followed with his responsive brief on May 30, 2012. (Doc. 11).  Mr. Banks elected not to reply.  This court has carefully considered the record and reverses and remands the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a

4

conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant

---

[4] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through January 24, 2013. *See, e.g.,* 20 C.F.R. § 401.5 ("Current through January 24, 2013").

must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further

6

show that such work exists in the national economy in significant numbers.  *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

On remand, the ALJ determined that Mr. Banks met the insured status requirements through December 31, 2004,[5] and that, despite some periodic employment, he had not engaged in substantial gainful activity since the alleged onset of his disability on May 3, 2000.  (R. 467).  Comparable to his first decision, the ALJ found Mr. Banks to have the following severe impairments:  status post-ORIF of the right ankle, mechanical back pain due to lumbar laminectomy, hypertension, and affective mood disorder.  (R. 468).

The ALJ then concluded that Mr. Banks's medically determinable impairments, either alone or in combination, did not meet or medically equal the criteria of an

---

[5]  This date last insured ("DLI") determination is applicable to Mr. Banks's DIB claim, but not his SSI one.  As the Eleventh Circuit explained in *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005):

> For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were[sic] insured. 42 U.S.C. § 423(a)(1)(A) (2005). Because Moore's last insured date was December 31, 1997, her DIB appeal requires a showing of disability on or before that date. Conversely, as Moore applied for SSI payments in April 15, 1998, her SSI appeal requires a showing of disability between that date and the date of the ALJ's decision, on February 23, 2001.

*Moore*, 405 F.3d at 1211 (emphasis added).

impairment listed in 20 C.F.R. Part 404 Appendix 1, Subpart P, of the Social Security

Regulations.  (R. 472).

The ALJ decided, akin to his first determination, that Mr. Banks had a residual

functioning capacity to perform light work[6] subject to the following restrictions:

> [L]imited to simple, noncomplex tasks; able to maintain concentration
> for 2 hours at a time in order to complete an 8 hour day provided
> customary breaks are given; contact with coworkers, supervisors and the
> general public should be casual; supervision should be
> nonconfrontational; can read at a 5th grade level; can perform simple
> math skills; no unprotected heights, ladders, ropes or scaffolds;
> occasionally push/pull with bilateral lower extremities; and occasionally
> reach overhead.

(R. 472).  Most of the vocational limits placed on Mr. Banks by the ALJ in 2009

mirror those listed in 2006 with only slight variations in the wording and the ordering

in which the restrictions are listed.  (*Compare* R. 472 *with* R. 18).

Then, in reliance upon testimony from a vocational expert, the ALJ determined

that Mr. Banks's light RFC coupled with additional restrictions did not prevent him

from performing his past relevant work as a meter reader.  (R. 473-74).  This

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

8

administrative finding was in contrast to the ALJ's first decision in which he concluded that Mr. Banks's collection of severe impairments prevented him from performing past relevant work as a coal mine burner, a bathtub assembler, a painter, and a tree cutter due to those positions' applicable exertional and/or skill levels, and as a meter reader because Mr. Banks's period of employment in that position was minimal. (R. 22-23).

Because Mr. Banks had only performed the position of meter reader on a part-time basis, the ALJ then proceeded to the fifth step on an alternative basis and, based upon vocational expert testimony, pointed to possible other employment in the reduced light category that Mr. Banks could perform such as an assembler, sorter, and material handler. (R. 474). Accordingly, the ALJ concluded that Mr. Banks was not disabled as defined by the Act, and denied his DIB and SSI claims. (Tr. 474; *id.* ¶ 7).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[7]

Mr. Banks primarily asserts that the Commissioner's second decision is deficient because (i) the record unequivocally documents his chronic severe pain (an issue not addressed by the court in its initial remand opinion)[8] (Doc. 10 at 8); and (ii) the ALJ's residual functional findings are not supported by substantial evidence. (Doc. 10 at 16).  Mr. Banks also argues that the ALJ erred "in failing to report a GAF of 50 especially as he did not overlook reporting an earlier higher GAF and its significance despite the District Court's memorandum opinion and order of remand." (Doc. 10 at 19).  In sum, Mr. Banks maintains that "the ALJ's decision on remand is essentially the same with respect to severe impairments, RFC, consideration of the evidence and rationale."  (Doc. 10 at 19).

The Commissioner contends, in response ,that substantial evidence does support the ALJ's decision that Mr. Banks is not disabled, and that "the medical treatment record does not document the presence of a debilitating psychological or physical condition."  (Doc. 11 at 6).  In its review, this court finds that the ALJ has once again failed to adequately address Mr. Banks's Global Assessment Functioning

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[8]*See* R. 499 at 14-15; *id.* at n.10.

("GAF") scores and, as a result, his decision is not supported by substantial evidence. Therefore, the case is due to be reversed and remanded.  Further, the court finds that the case is due to be assigned to a different ALJ upon remand.

**I.**    **THE ALJ'S NEW DECISION DOES NOT ADEQUATELY ADDRESS THE GAF ISSUE IDENTIFIED BY THIS COURT IN ITS REMAND MEMORANDUM OPINION.**

In the court's 2008 remand decision, the undersigned explained:

**A. The ALJ failed to adequately address Mr. Banks's multiple Global Assessment of Functioning ("GAF") scores.**

Mr. Banks asserts that "[a]lthough the ALJ purported to give great weight to the 'records' of Dr. Aftab (R. 22), the ALJ neglected to report [Dr. Aftab's assignment of a lower] GAF, reporting only a higher GAF on discharge from the March 2004 admission and indicating its significance per the DSM-IV (R. 21)."   (Doc. 9 at 11).    The Commissioner argues in response that a low GAF score "is not in and of itself determinative of disability."   *See Hellman v. Barnhart*, 48 Fed. Appx. 26, 30 at n.1 (3d Cir. 2002).   The case relied on by the Commissioner for this point is unpublished, and thus it is neither binding on the Eleventh Circuit nor this court.  *See Baker v. Birmingham Board of Education*, 531 F.3d 1336, 1338 (11th Cir. 2007).  Therefore, *Hellman* is at most only persuasive authority.  In any event, the court disagrees with the Commissioner that *Hellman* establishes that a low GAF score, which is ignored by the ALJ, is not a valid issue on appeal simply because it may not prove disability in and of itself.

Mr. Banks received treatment from Dr. Aftab at the Indian River Mental Health Center in late 2004 and early 2005.  (R. 21, 263-292). Mr. Banks also received treatment for depression and withdrawal symptoms in 2004 at the Northport Medical Center.  (R. 21, 155-72). The ALJ assigned significant weight to Dr. Aftab's opinions, but did not expressly establish how much weight he placed on the opinions of

Northport Medical. (R. 21-22). Yet the ALJ refers to the GAF given to Mr. Banks by Northport Medical and simultaneously omits any mention of GAF scores given by Dr. Aftab. (R. 21-22). This omission is troubling to the court, especially given the fact that the GAF score of 70 given by Northport Medical is significantly greater than Dr. Aftab's assigned scores of 50 and 53. (R. 157, 271, 278). A GAF of 70 indicates "no more than slight impairment in social, occupational, or school functioning," while a GAF of 50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job)." *Diagnostic and Statistical Manual of Mental Disorders, 4th Edition*, American Psychiatric Association, 1994, at 32-4. Moreover, the GAF of 70 was assigned to Mr. Banks upon his discharge of the treatment facility. (R. 157). It is not in the record what GAF scores, if any, were given to Mr. Banks prior to his discharge from Northport Medical in March 2004. On the other hand, Dr. [A]ftab's scores of 50 and 53 were given throughout several months of treatment from late 2004 to early 2005. (R. 271, 278).

The ALJ failed to adequately address Mr. Banks's GAF scores. Notably, he gave significance to the meaning of the higher GAF score, while never clarifying on the record whether or why he accepted the GAF score of 70 over the scores of 50 and 53. "It is not enough to discover a piece of evidence which supports the decision, but to disregard other contrary evidence." *McCruter v. Bowens*, 791 F.2d 1544, 1548 (11th Cir. 1986).

In *McCloud v. Barnhart*, the Eleventh Circuit reversed and remanded when the ALJ completely disregarded a GAF score of 48 and was unclear about the weight he afforded the claimant's GAF of 45. 166 Fed. Appx. 410, 418-20 (11th Cir. 2006). Just as in *McCloud*, the ALJ in the present case neither explained the weight he gave to the GAF score of 70 nor why he ignored the lower scores of 50 and 53. Although *McCloud* is also merely persuasive authority, the court agrees with its analysis that recognized the importance of considering or at least explaining the weight of multiple, distinct GAF scores.

Moreover, the Supreme Court has stated that "[t]he trier of fact has the duty to resolve conflicting medical evidence." *Richardson v. Perales*, 402 U.S. 389, 399 (1971). By not addressing the conflicting GAF scores in his decision, the ALJ failed to resolve a conflict between an opinion suggesting "no more than slight impairment" and another suggesting a "serious impairment." *Diagnostic and Statistical Manual of Mental Disorders, 4th Edition*, American Psychiatric Association, 1994, at 32-4. <u>In further developing the record, it may become clear that the GAF scores of 50 and 53 merit little weight, but the court can come to no such conclusion based on the record before it at this time.</u>

(R. 494-97 (footnotes omitted) (emphasis added)).

The undersigned also pointed to several additional authorities that supported the decision to remand for further development of the GAF issue. (*See* R. 497 at 12 n. 8 (citing *Roberson v. Astrue*, No. 3:07-CV-1541-VEH, (Docs. 10, 11) (N.D. Ala. June 11, 2008) (reversing and remanding under very similar circumstances where the court found that the ALJ's treatment of competing GAF scores was not adequate); *see also Seidman v. Astrue*, No. 6:07-CV-1921-VEH, (Docs. 11, 12) (N.D. Ala. June 30, 2008) (reversing and remanding where "the ALJ failed to explain why Dr. Harrison's opinion was found to be consistent with the very medical evidence that the ALJ used to conclude that [the claimant] was not disabled when Dr. Harrison used such findings to determine that [the claimant] was disabled"); *but compare Carlisle v. Astrue*, No. 3:06-CV-0983-VEH, (Docs. 11, 12) (N.D. Ala. June 5, 2007) (affirming the Commissioner's decision where the ALJ afforded little weight to an unfavorable

GAF score but explained his reason for doing so)).

Thus, the court found that the first decision was not supported by substantial evidence because the ALJ failed to adequately address the weight of Mr. Banks's varying GAF scores. The court now turns to ALJ's treatment of the GAF issue in his decision on remand.

The ALJ discussed Mr. Banks's GAF scoring as follows:

The claimant has the affective disorder of depression. While he was hospitalized in March 2004 for depression and withdrawal symptoms, at the time of his discharge he was not delusional or psychotic, there was no evidence of hallucinations, his thought contents were within normal limits, and his Global Assessment Functioning (GAF) was assessed to be in the 70's (Exhibit 3F). On physical examination by Dr. Boston two months later the claimant was reported to be oriented to time, place, and person and his mood and affect were appropriate (Exhibit 4F).

Records of group therapy sessions at Indian River Mental Health Center in late 2004 and early[sic] consistently report the claimant was psychologically stable (Exhibit 11F). On March 11, 2005, Syed R. Aftab, M.D., on staff at Indian River Mental Health Center, completed a psychiatric evaluation of the claimant. While the claimant's affect was somewhat blunted, he was alert and oriented times four. The claimant was cooperative and maintained good eye contact with no psychomotor agitation or retardation noted. His rate of speech was normal and his thought processes were logical and goal oriented. There were no auditory or visual hallucinations and no suicidal or homicidal ideation. The claimant's insight and judgment were assessed to be fair (Exhibit 11F).

(R. 470-71 (footnote omitted)).

Noticeably absent from this summary is any reference to Mr. Banks's GAF

score of 50 in February of 2005 and 53 in November of 2004 contained in Exhibit

11F.  (R. 271, 278).  In fact, these two paragraphs are worded in the exact same

manner as they were in the ALJ's first decision.  (*Compare* R. 470-71 *with* R. 21).

Further, the ALJ's description of these records still erroneously suggests that Exhibit

11F lacks any medical confirmation of significant deficits in Mr. Banks's mental

functioning.  The GAF evidence included in Exhibit 11F, but ignored by the ALJ,

does not show the soundness of Mr. Banks's psychological state, but rather points to

its instability.

More specifically, and as the court explained in its first opinion, a GAF of 50

signifies that a claimant has a serious impairment in social, occupational, or school

functioning. (R. 495 at 10). "A GAF of 51–60 indicates '[m]oderate symptoms (*e.g.*,

flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty

in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers

or co-workers).'" *Kornecky v. Commissioner of Social Security*, 167 Fed. App'x,

496, 503 (6th Cir. 2006) (citing *DSM–IV–TR* at 34 (capitalization and boldface

omitted)).

Later in his decision, the ALJ gave significant weight to the Indian Rivers

Community Health Center records and Dr. Aftab's opinions contained in Exhibit 11F:

Significant weight is accorded to the records of group therapy sessions

at Indian River Mental Health Center and to the opinions of Dr. Aftab, a specialist in the field of psychiatry.  There records are consistent throughout and are not contradicted by any substantial evidence of record.  Moreover, the claimant's hearing testimony indicates that he is no longer being seen for any psychological reasons or taking any medication for psychological reasons.

(R. 473).  With the exception of the third sentence (which pertains to Mr. Banks's psychological state in 2009),[9] this identical paragraph appears in the ALJ's first decision. (*Compare* R. 473 *with* R. 22).  <u>Thus, in arriving at Mr. Banks's mental residual functional capacity, the ALJ has, for a second time, purportedly placed significant weight on Dr. Aftab's opinions and related records, but never acknowledged, much less assigned any specific weight, to the GAF scores of 50 and 53</u>.

Regarding the ALJ's GAF analysis, the Commissioner argues:

In remanding the case, the Court criticized the ALJ for relying on a global assessment of functioning (GAF) score of 70 without considering other scores (Tr. 494-497). The ALJ in the current decision did not rely on any single GAF score in determining Plaintiff's limitations or credibility (Tr. 472-473). The ALJ's reasoning is consistent with the Commissioner's decision against endorsing the use of the GAF scale in disability cases and his determination that the GAF scale does not correlate to the severity requirements of the regulations. *See* 65 Fed. Reg. 50746, 50764-65 (2000); *see also Kornecky v.*

---

[9] As Mr. Banks observes, despite the significant elapse in time between the onset of his disability on May 3, 2000, and the issuance of the ALJ's second decision on December 16, 2009, "the ALJ did not bifurcate his findings in any way," (Doc. 10 at 8) and, instead, found that the same RFC applied for the entire expansive period.

16

*Commissioner of Soc. Sec.*, 167 Fed. Appx. 496, 511, 2006 WL 305648 (6th Cir. 2006)("we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place. . . . If other substantial evidence (such as the extent of the claimant's daily activities) supports the conclusion that she is not disabled, the court may not disturb the denial of benefits to a claimant whose GAF score is as low as [50] or even lower"). In the present case, the ALJ relied primarily on records of group therapy which showed that Plaintiff was stable, Dr. Aftab's finding that Plaintiff was alert, cooperative, logical, and coherent, and Plaintiff's testimony that he was no longer taking medication for depression or seeking psychological treatment (Tr. 643-644). The ALJ reasonably inferred from this evidence that Plaintiff's psychological issues affected his ability to work, but were not disabling (Tr. 473). *See Smith v. Soc. Sec. Admin.*, 272 Fed. Appx. 789, 796, 803 (11th Cir. 2008) (reasoning that GAF score of 45 was immaterial to ALJ's decision).

(Doc. 11 at 15-16).

The court is not persuaded by the Commissioner's position. Not only does he rely upon unpublished and non-binding decisions issued by the Sixth and Eleventh Circuits, but also he fails to provide any authority for why this court should, in this second appeal, affirm the ALJ's decision when he has essentially restated the same GAF analysis, which the undersigned previously rejected as inadequate in 2008.

Additionally, even if an ALJ need not "put stock in a GAF score in the first place," *see Kornecky*, 167 Fed. App'x at 511, this particular ALJ has interjected Mr. Banks's GAF scoring into his disability analysis with respect to Mr. Banks's mental

17

functioning two times (and thus made Mr. Banks's GAF material to his decision)[10] without adequately addressing Mr. Banks's complete GAF picture.  The ALJ also has twice purportedly placed significant weight on Dr. Aftab's opinions, without ever acknowledging the GAF scoring attributable to Dr. Aftab's psychiatric treatment that is favorable to Mr. Banks's disability claim.

Therefore, because the ALJ's second decision does not extinguish the court's concerns about the GAF issue that were clearly articulated in the undersigned's 2008 memorandum opinion as set forth above, the court concludes that the ALJ's RFC finding as to Mr. Banks's mental functioning is not based on substantial evidence.  Likewise, the court finds that the Commissioner's disability determination is not supported by substantial evidence.

## II. THE ALJ'S NEW DECISION DID NOT APPLY THE PROPER STANDARD TO MR. BANKS'S SUBJECTIVE ALLEGATIONS OF CHRONIC PAIN.

In its first opinion, the court did not reach the issue of Mr. Banks's subjective allegations of chronic pain.  This time it does.

The Eleventh Circuit pain standard provides:

---

[10]  Further, the Commissioner's citation to *Smith* is easily distinguishable, as it involved a claimant's reliance upon a GAF score generated <u>after</u> the ALJ's denial of disability.  *See Smith*, 272 Fed. App'x at 796 ("Also after the ALJ's decision, on 20 June 2006, Dr. David Wilson performed a psychological evaluation in which he diagnosed Smith with, among other things, major, severe depression with possible psychotic features and a Global Assessment of Functioning ("GAF") of 45, which indicated serious mental symptoms or impairments.").

This court has established a three-part "pain standard" that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *See Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor*, 786 F.2d at 1054; *Landry*, 782 F.2d at 1152. <u>If the Secretary decides not to credit such testimony, he must discredit it explicitly, *MacGregor* at 1054, and articulate explicit and adequate reasons for doing so.</u> *Hale*, 831 F.2d at 1011. <u>Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true.</u> *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Hale*, at 1011; *MacGregor*, at 1054.

*Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (emphasis added).

Similarly, as the Commissioner explains in his brief, "when the medical evidence indicates the existence of such an impairment, the fact finder must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." (Doc. 11 at 8). Here, Mr. Banks claims that his ankle and back impairments (which he has established and the ALJ has found to exist) cause him disabling pain.

In addressing Mr. Banks's pain, the ALJ stated:

19

> In summary, the undersigned finds that the claimant's testimony of
> disabling functional restrictions is disproportionate to the <u>objective</u>
> medical evidence.   The record does not contain <u>objective</u> signs and
> findings that could reasonably be expected to produce the degree and
> intensity of the limitations alleged.   There are no diagnostic studies to
> show abnormalities that could be expected to produce such severe
> symptoms.  Further, there is no <u>objective</u> evidence to support his claims
> that he must lie down 2-3 hours per day due to pain.

(R. 472-73 (emphasis added)).   While the ALJ noted the record's lack of objective

measures confirming Mr. Banks's subjective allegations of pain, he did not ever

address Mr. Banks's credibility explicitly in his decision.  *Cf. Holt v. Sullivan*, 921

F.2d 1221, 1223 (11th Cir. 1991) ("The decision by the ALJ contains no indication

that he applied this standard.").

The court also struggles to see how the ALJ adequately treated the issue

implicitly.   For example, while the ALJ purportedly "found" no medical signs that

"could reasonably be expected to produce the degree and intensity of the limitations

alleged[:]"

> The medical evidence conclusively shows that there were several
> determinable [ankle] and back impairments that could have caused M[r].
> [Banks]'s pain.   There is no evidence that these impairments do not
> exist.   The [Commissioner]'s decision, therefore, that M[r]. [Banks]'s
> pain testimony was not credible for this reason is not supported by
> substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

While the Commissioner suggests that the ALJ used the physical capacities

20

evaluation performed by Roland Rivard. M.D. ("Dr. Rivard") on December 7, 2000 (R. 473, 469), to implicitly discredit Mr. Banks's subjective allegations of pain (Doc. 11 at 8-9), even if this report were sufficient to partially discount Mr. Banks's credibility, it could not address any subjective complaints of pain stemming from Mr. Banks's ankle fracture, which occurred in May 2001 (*i.e.*, five months after Dr. Rivard's report).

Pointing to R. 473, the Commissioner contends that "the ALJ cited at least three reasons for finding Plaintiff's subjective allegations not entirely credible." (Doc. 11 at 17). However, this court cannot find one ground (much less three) on this page, which adequately expresses why the ALJ disregarded Mr. Banks's subjective pain testimony. Accordingly, this case must alternatively be remanded for the Commissioner to properly consider Mr. Banks's subjective pain complaints.

## CONCLUSION[11]

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision was not supported by substantial evidence. Accordingly, the ruling of the Commissioner is due to be reversed, remanded, and assigned to a different ALJ by the Commissioner

---

[11]  In light of the Commissioner's deficient treatment of the GAF issue and the Eleventh Circuit pain standard, the court does not reach Mr. Banks's additional arguments presented in this second appeal.

upon remand.  A separate order in accordance with the memorandum opinion will be entered.

DONE and **ORDERED** this the 12th day of February, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge